AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>Anthony Maurice Brown, | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 19- MJ-06344 - TORRES |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 29, 2019_____ in the county of _____Broward_____ in the _____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2113(a) | did knowingly, by force, violence and intimidation, take from the person and presence of another money, belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation. |

This criminal complaint is based on these facts:

see attached affidavit.

☐ Continued on the attached sheet.

_____
Complainant's signature

Ryan Dreibelbis, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __July 18, 2019__

_____
Judge's signature

City and state: _____Miami, Florida_____      Edwin G. Torres, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your affiant, Ryan Dreibelbis, being duly sworn, deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division. I have been an FBI Special Agent since February 2018 and have been assigned to the Miami Division since May 2019. My duties involve investigating violations of federal offenses, including bank robberies, Hobbs Act robberies, extortion, and other violations of federal law. Prior to moving to the Miami Division, I worked as a Special Agent for a year and a half and investigated narcotics trafficking violations while assigned to the New York Division of the FBI.

2. I make this Affidavit in support of a criminal complaint charging **ANTHONY MAURICE BROWN** with knowingly, by force, violence and intimidation, take from the person and presence of another money, belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

3. I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

### PROBABLE CAUSE

4. On or about May 29, 2019, at approximately 3:54 p.m., a male – later identified as Anthony Maurice Brown – entered a Bank of America branch, located at 150 NE 44th Street,

Oakland Park, Florida. This bank's deposits were then insured by the FDIC. Brown approached one of the bank tellers and handed over a note on a torn piece of paper. The teller recalled that the note demanded money, claimed that Brown had a gun on his person, and threatened to shoot people. The bank teller pressed the alarm and backed away from the counter. As soon as the teller did that, Brown responded, "I wouldn't do that if I were you." Fearful of what Brown would do, the teller removed money from the bank drawer – approximately $1,729.51 – and gave it to Brown, who instructed the teller to include "no dye pack." Brown subsequently grabbed the money and fled. The teller then notified the manager of what transpired. After reviewing two digital surveillance photographs of the robbery, the teller identified the individual who committed the robbery.

5. Law enforcement responded to the scene of the robbery and reviewed the bank's video surveillance. The footage showed Brown's face partially obstructed by a baseball cap and sunglasses. It depicted him as wearing a dark colored polo shirt, blue jeans, brown shoes, and a dark blue baseball cap with a green logo on the side that read, "FREEBEE." At the time of the robbery, Brown was also holding what appeared to be a cell phone and what appeared to be a white piece of paper in his left hand.

6. That same day, law enforcement began canvassing the area around the bank and discovered the suspect dark colored polo shirt, blue jeans, brown shoes, and baseball cap a short distance away from the scene of the robbery. Law enforcement also recovered a GPS tracking device that the teller had given to Brown, mutilated United States currency, and a single twenty (20) dollar bill that Brown had discarded in an adjacent parking lot.

7. On July 5, 2019, a cooperating witness ("CW-1") was watching the news when he/she saw an image of the man alleged to have committed the May 29, 2019, Bank of America

robbery. CW-1 subsequently contacted law enforcement, resulting in your affiant interviewing CW-1. During the interview, CW-1 stated that he/she recognized the robber and knew him as "Anthony B." and "Tony." CW-1 had previously seen "Anthony B." in a homeless camp, located behind the FedEx Facility on Blount Road in Pompano Beach, Florida. CW-1 described the tent belonging to "Anthony B." as being located off the second path past the FedEx facility off Blount Road after turning north off Copans Road, adding that the path went through a bush and led to several tents. CW-1 stated that the first red tent with a blue tarp over half of it belonged to "Anthony B." CW-1 later provided your affiant with two videos depicting the tent. CW-1 stated that, after seeing the news report, he/she went to the homeless camp and observed "Anthony B." in his tent and saw a hat similar to the one worn by the robber in the same tent. Your affiant showed a copy of the photograph depicting the robber to CW-1, who confirmed that it depicted "Anthony B." Your affiant then provided a driver's license photograph of an individual bearing the name "Anthony Brown"[1] to CW-1. At first, CW-1 initialed the photograph and identified the individual as "Anthony B." CW-2, within earshot of CW-1, questioned CW-1's identification. Upon further examination, CW-1 determined that the photograph was not an accurate depiction of the true "Anthony B." and subsequently struck out his/her initials.

8. On July 5, 2019, your affiant interviewed CW-2, who is CW-1's spouse. CW-2 identified the robbery suspect as "Anthony B." CW-2 met "Anthony B." approximately one month prior when "Anthony B." moved to the homeless camp, where CW-2 also resided. CW-2 believed "Anthony B." was 57 years old, and recalled him stating that he had previously served twenty (20) years in prison for robbery. Shortly after moving to the homeless camp, "Anthony B." told CW-2 that he could give CW-2 "work," if CW-2 wanted it. CW-2 understood this to mean selling

---

[1] "Anthony Brown" and the "Anthony Maurice Brown" who committed the robbery are two different people.

narcotics, because he/she knew "Anthony B." to sell MDMA, crack cocaine, and heroin, and had seen narcotics in his tent. CW-2 knew "Anthony B." carried a pistol, believed to be a .380 caliber, and recalled "Anthony B." offering to get a pistol for CW-2 if CW-2 wanted one. "Anthony B." kept the pistol in his tent in a red bag when he was not carrying it. "Anthony B." also told CW-2 that if "Anthony B." did not come back from what he was doing, CW-2 should give all his possessions to an unknown female that was living with "Anthony B." While living in the camp, CW-2 stated that "Anthony B." and his associate – known only by the nickname "City" – seemed to have a large amount of cash, adding that, in early June 2019, "Anthony B." boasted that he was "swimming in cash." CW-2 knew that "Anthony B." did not like to leave the homeless camp but when he did, he went to "The Hack," known to law enforcement as the Broward Outreach Center, located at 1700 Blount Road, Pompano Beach, Florida. Your affiant showed a copy of the photograph depicting the robber to CW-2, who confirmed that it depicted "Anthony B." Your affiant then provided a driver's license photograph of an individual bearing the name "Anthony Brown" to CW-2. CW-2 denied that this was the correct "Anthony B."

9. On July 5, 2019, your affiant visited The Broward Outreach Center ("The Center"). Your affiant interviewed an employee of the Center ("CW-3"), who recognized the alleged robber shown in the bank surveillance photograph as a client of the Center. CW-3 stated that he/she had last seen the client approximately one month ago. Another employee of the Center ("CW-4") recognized the man in the bank surveillance photograph as a client of the Center, adding that he/she had last seen the individual in question on either June 28, 2019, or July 1, 2019.[2]

10. On July 8, 2019, an employee of the Center ("CW-5") provided a list of clients whose first name was "Anthony." Based on a review of the client list, law enforcement learned

---

[2] Another employee of the Center stated that no one named "Anthony" visited the Center on July 1, 2019.

that "Anthony Brown," age 55, had visited the Center between June 28, 2019, and July 1, 2019. Law enforcement then conducted a search through law enforcement databases and found an "Anthony Maurice Brown," born on February 19, 1964, who listed the Center's address as his place of residence. Brown's criminal history showed robbery and burglary convictions.

11. On July 10, 2019, your affiant obtained the driver's license photo of Anthony Maurice Brown and showed it to CW-1. CW-1 positively identified Brown as "Anthony B." and initialed the document. Separately, your affiant showed the same photograph to CW-2, who also positively identified Brown as "Anthony B." before initialing the document.

12. On July 18, 2019, CW-2 informed your affiant that Brown would be obtaining his disability payment on either July 18, 2019, or July 19, 2019. A detective from the FBI's South Florida Violent Crime Task Force responded to the closest Social Security office to Brown's campsite, located at 5195 Coconut Creek Parkway, Margate, Florida. When the detective arrived, Brown was already in the office. The detective confirmed Brown's identity with security staff from the Social Security office, and took Brown into custody.

13. Later on that day, July 18, 2019, the detective and your affiant interviewed Brown. Brown stated he was living near the Center and that he was homeless. After signing a *Miranda* waiver, and while viewing a photo of the robber of the Bank of America on May 29, 2019, Brown stated, "That's very bad." Brown did not deny involvement in the robbery. However, Brown stated that, based on his criminal history, it would basically be a life sentence because of his heart condition.

## CONCLUSION

14. Based on my training and experience, and as further supported by the facts in this affidavit, I respectfully submit that probable cause exists that on or about May 29, 2019, **ANTHONY MAURICE BROWN** did knowingly take, by intimidation, from the person and presence of employees of Bank of America, located at 150 NE 44th Street, Oakland Park, Florida, approximately $1,729.51 in U.S. currency, belonging to, and in the care, custody, control, management, and possession of Bank of America, a bank whose deposits were then insured by the FDIC, in violation of Title 18, United States Code, Sections 2113(a).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

SPECIAL AGENT RYAN DREIBELBIS
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn before me
this ___ day of July, 2019.

HONORABLE EDWIN G. TORRES
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.  19 - MJ - 06544 - TORRES

UNITED STATES OF AMERICA

v.

ANTHONY MAURICE BROWN,

Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ___Yes _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___Yes _X_ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____
AJAY J. ALEXANDER
Assistant United States Attorney
Court ID No. A5502506
99 Northeast 4th Street
Miami, FL. 33132-2111
Tel: (305) 961-9427
Fax: (786) 385-4604
Ajay.Alexander@usdoj.gov